**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**CHERYL LOVE, and individual,**

**Plaintiff,**

**v.** **Case No. 04-CV-0114-CVE-SAJ**

**HILTI, INC., a corporation licensed and operating in the State of Oklahoma,**

**Defendant.**

**OPINION AND ORDER**

Now before the Court is the motion for summary judgment (Dkt. # 10) filed by defendant Hilti, Inc. ("Hilti") as to claims by plaintiff Cheryl Love ("Love"), a current employee of Hilti, alleging retaliation in the form of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*) and 42 U.S.C. § 1981. Hilti moves for summary judgment on the grounds that: (1) plaintiff has not demonstrated and cannot demonstrate actionable conduct by Hilti that would constitute racial or sexual discrimination or harassment rising to the level of a hostile work environment; (2) plaintiff failed to take advantage of preventive and corrective opportunities provided by Hilti, leaving Hilti eligible to assert an affirmative defense; (3) even if this were not the case, plaintiff has failed to exhaust her administrative remedies with regard to age and sex discrimination such that these claims are not properly before this Court; and (4) plaintiff has failed to establish a *prima facie* case of retaliation or pretext.

**I.**

Love, an African-American woman, alleges that both her supervisor, Tim Piguet ("Piguet"), and other co-workers at Hilti's Tulsa National Distribution Center where Love was, during the relevant period, and still is, employed as a warehouse worker created a hostile work environment

for her in retaliation for having previously filed a discrimination charge against Hilti with the Oklahoma Human Rights Commission ("OHRC"). She also alleges that she was refused a merit pay increase for 2002 or 2003 in retaliation for filing this charge. The charge was based on what is referred to as the "Chocolate Pudding" incident in which an 18 year-old white male warehouse worker made a comment to a fellow white male worker concerning a black female employee (not Love) whom both found to be attractive. The first worker asked the second: "Are you interested in that chocolate pudding?" The second worker repeated the remark to Love. Neither the second worker nor Love reported it, as required by Hilti's harassment policy. When Hilti learned of the incident from the worker who made the remark (trying for forestall disciplinary proceedings against himself), the second worker and Love were given written reprimands for failure to comply with the harassment policy, and the first worker was disciplined for having made the comment. Love complained to the OHRC about her written reprimand. Hilti offered to resolve the case by removing the written reprimand from Love's file and the case was settled by August 2002.

Love asserts that the following conduct by her supervisor and co-workers was retaliatory for this previous OHRC complaint and resulted in a hostile work environment: (1) Piguet asked her "Ain't you done yet?" when she had not yet completed a task he had assigned her; (2) Piguet asked her to sweep the floor of the work area, to put out the trash when it was raining, and assigned her the task of "pulling strut," a task which she claims no other woman was assigned; (3) Piguet asked a co-worker, who had been in Love's work area affixing labels to packages, as he passed by, "What are you doing, Israel, licking and sticking?", which question Love found to be sexually offensive in nature; (4) a female co-worker and former supervisor, Jesse Campbell ("Campbell"), in reference to a <u>National Geographic</u> photograph of a crowded ferry crossing the Congo River, commented

"And Receiving thinks they have space problems," which comment Love found to be racially offensive;[1] (5) an unidentified temporary employee saw a Smithsonian Magazine photograph depicting the taxidermy of a hippopotamus and commented in the presence of plaintiff, "It looked like the man was fucking the rhinoceros;"[2] (6) plaintiff discovered, on a routing table, a balled up piece of paper upon which was drawn a cartoon of a stick person urinating on the Stanley Cup, which cartoon she found sexually offensive; (7) Campbell sings in her church choir and brought an announcement for one of their recitals to work; plaintiff attended the service but claims it was inappropriate for Campbell to let her fellow employees know about the program; (8) as Campbell was showing plaintiff a Christmas ornament depicting "white faced girls," and asking whether plaintiff believed the intended recipient would be offended by it, Campbell commented, "This is a white world;" (9) Piguet said the words "boogie woogie" to plaintiff and a co-worker, which words plaintiff found to be racially offensive.

Defendant first points out that Piguet did not learn of the Chocolate Pudding incident until he was deposed in this matter, and that he could not have retaliated on the basis of something he knew nothing about. Further, sweeping the floor and taking out the trash are both common tasks performed by everyone in the department, including Piguet himself, especially by those on "light-duty" due to injury, as was the case for Love during the relevant period. As to the National Geographic ferry picture incident, defendant points out that the Receiving Department was having space problems at the time the comment was made, and that plaintiff herself admits that Campbell

---

[1] The people on the ferry were Congolese, although plaintiff refers to them in her briefs as Haitian Boat People or Haitians.

[2] The photograph depicts a hippopotamus, but plaintiff recounts the comment as concerning a rhinoceros.

made no racial comment about the picture. As to the hippopotamus/rhinoceros photograph, defendant observes that plaintiff did not know who the temporary employee was. With regard to the drawing of the stick figure urinating on the Stanley Cup, defendant points out that it was not directed at plaintiff; rather she found the paper balled up in a common area, unballed it herself, saved it, and took it home with her. She does not know who drew it or why.

Defendant also points out, in relation to the crowded ferry, rhinoceros/hippopotamus, Stanley Cup, and choir concert incidents, that although there can be no mistake that plaintiff understood Hilti's harassment policy and procedures because the entire OHRC complaint was based on Hilti's letter of reprimand to plaintiff for her failure to follow them, she failed to report these allegedly harassing incidents to either the human resources department or management at Hilti.

Love also claims that the negative performance evaluation, lack of merit increase in pay, and alleged refusals to assign her to more desirable shifts were made in retaliation for her OHRC complaint. Hilti asserts that the evaluation and lack of pay increase were justified by Love's performance and all three actions were fully consistent with company policy. Love asserts that the job performance explanation was created as a pretext for retaliatory discrimination but offers no evidence other than attenuated temporal proximity and her own opinion. Hilti argues that there were policies and procedures in place for dealing with such alleged retaliation, and Love's failure to comply with those procedures left Piguet and Hilti without any idea that there was an issue of retaliatory discrimination.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

The Tenth Circuit has firmly established that "exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th

Cir.), cert. denied, 520 U.S. 1115 (1996) (case dismissed where issues asserted in complaint were not raised in EEOC charge). In her OHRC charge related to this case, Love alleges only retaliation for the filing of a previous charge. Motion for Summary Judgment (Dkt. # 10), Ex. O. She does not mention age, race, or gender discrimination as at issue anywhere on the charge form. Id. Because she has not yet exhausted her administrative remedies with regard to any claims she may be bringing concerning sex and gender discrimination, they are not properly before this Court and must be dismissed.[3] Any claims she may be bringing concerning race discrimination [4] would remain under 42 U.S.C. § 1981 *et seq*. which does not make exhaustion of administrative remedies a prerequisite.

**IV.**

To show actionable racially discriminatory conduct by Piguet, Campbell, and other co-workers for which Hilti would be liable under Title VII (42 U.S.C. § 2000e-2(a)(1)) or 42 U.S.C. § 1981, Love must demonstrate that the terms and conditions of her employment were negatively impacted by that conduct or behavior. More specifically, she must show that a rational jury could find that the "workplace [was] permeated with 'discriminatory intimidation, ridicule and insult,' that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). The plaintiff must produce evidence that she was the object of harassment because of her race. Witt v. Roadway Exp.,

---

3 Despite Love's inclusion of deposition testimony by her co-workers supporting the allegation that her supervisors were trying to make her want to quit because of her age, the fact that she failed to exhaust her administrative remedies before bringing this claim leaves the Court no choice but to dismiss any related claims. See Response (Dkt. # 16), Ex. B, p. 9, ll. 5-21, p. 20, ll.15-17.

4 A lack of clarity in both the complaint and the response to the motion for summary judgment has left it unclear whether plaintiff wishes to make any pure discrimination claims, in addition to her retaliation claims.

136 F.3d 1424, 1432 (10th Cir. 1998); Hawkins v. Pepsico, Inc., 203 F.3d 274, 281-82 (4th Cir. 2000). The frequency and severity of the discriminatory conduct, whether it is physically threatening, humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance, are all factors to be considered in the course of this determination. Harris, 510 U.S. at 23. The Supreme Court has emphasized that

> [an] objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so. . . . [S]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotations and citations omitted). Further, the Tenth Circuit has clarified that to demonstrate a hostile work environment, a plaintiff must present "admissible evidence that she was subjected to a steady barrage of opprobrious racial comments" Witt, 136 F.3d at 1432.

Love has described nine isolated comments or incidents involving Piguet, Campbell, and other co-workers occurring over the course of several months which she claims created a hostile work environment for her. Nine incidents over several months is difficult to characterize as a "steady barrage." Not only were there only nine incidents over a several-month period, but also the incidents themselves do not seem severe, and they are certainly not pervasive. Although three of the nine could be very broadly read as racially offensive, only two of these could possibly be argued directly to involve plaintiff, and Hilti's assertions and clarifications make them sound more like the "rough edges and foibles that individuals bring to the table of their interactions" in the workplace, found insufficient by the Fourth Circuit in Hawkins, or the "simple teasing, offhand comments, and isolated incidents," classified as insufficient by the Supreme Court in Faragher. Further, Love has

not asserted any issue of a physical threat of any kind. Finally, there is no evidence that Love gave Hilti any indication that she found any of these incidents particularly hostile or abusive until she filed this lawsuit.[5]

Accordingly, the Court finds that, even taken in the light most favorable to plaintiff, there is insufficient evidence of a racially discriminatory work environment and that summary judgment must be granted in favor of defendant as to any claim plaintiff may have stated based on section 1981.

**V.**

Plaintiff clearly states a claim based upon Title VII's prohibition of discrimination by employers against employees in retaliation for opposing unlawful employment practices. See 42 U.S. C. § 2000e-3(a). Plaintiff has exhausted her administrative remedies with regard to this claim. A *prima facie* case of retaliation is established under Title VII if plaintiff shows that:

> (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3)

---

5 Plaintiff's OHRC complaint form could not have given Hilti notice of Love's complaints concerning alleged racially harassing comments by her supervisor and co-workers. It only mentions the poor evaluation, shift issue, and lack of merit pay increase. Plaintiff does not claim to have gone to anyone in Hilti management or human resources until February 2004.

Although it appears that the affirmative defense laid out by the Supreme Court in Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998), might apply to a § 1981 claim, see Swinton v. Potomac Corp., 270 F.3d 794, 803 n.3 (9th Cir. 2001); see also Dennis v. County of Fairfax, 55 F.3d 151, 155 (4th Cir.1995) (predating Faragher and Ellerth but applying similar reasoning); Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1509 n.3 (11th Cir.1989) (same), the Court does not reach defendant's argument regarding this defense because it has found plaintiff's evidence insufficient to create a genuine issue of material fact as to a racially hostile work environment.

> there is a causal connection between the protected activity and the adverse employment action.

Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1263-64 (10th Cir. 1998) (quoting Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381 (10th Cir. 1994)). The Tenth Circuit has recently clarified that, although it will "liberally construe the phrase adverse employment action, the action must amount to a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . causing a significant change in benefits." Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). Adverse employment actions are not simply limited to monetary losses in the form of wages or benefits, but include acts that carry a significant risk of humiliation or damage to reputation when attended by harm to future employment prospects. Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004). A written reprimand or negative employment evaluation may constitute an adverse employment action when accompanied by additional evidence of some immediate effect on the employee's future employment prospects (for instance, evidence of a policy that the more warnings an employee receives, the more likely he or she is to be terminated for a further infraction). Hysten v. Burlington N. & Santa Fe Ry., 296 F.3d 1177, 1183 (10th Cir. 2002); Roberts v. Roadway Exp., Inc., 149 F.3d 1098, 1104 (10th Cir.1998). As discussed in the context of the affirmative defense, the denial of a raise clearly rises to the level of an adverse employment action. Ellerth, 524 U.S. at 761.

Love meets the first element in that she formally complained on May 10, 2002 to the OHRC about Hilti's reprimand of her concerning the Chocolate Pudding incident. The denials of merit pay increases meet the second element. The shift assignment issue, if proven to be a "reassignment resulting in significantly different duties," would also rise to the level of adverse employment action.

However, Love fails to satisfy the third element – the causal connection between any adverse employment action and the reporting or "protected activity."

Love has offered no direct evidence of a causal connection. Instead she has asserted temporal proximity of approximately six months between her first OHRC charge and the allegedly retaliatory behavior. Beyond this she has only her own opinion of what truly motivated Hilti's actions with respect to her assignments and compensation. Defendant's Motion for Summary Judgment (Dkt. # 10), Ex. P, at 59, ll. 4-19.

Absent direct evidence of retaliation, a retaliation claim should be analyzed according to the McDonnell Douglas burden-shifting framework. Stover v. Martinez, 382 F.3d 1064, 1070-71 (10th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and Jeffries v. Kansas, 147 F.3d 1220, 1231 (10th Cir.1998) (applying the McDonnell Douglas framework to a claim of retaliation)). Under this framework, once an employee presents a *prima facie* case of retaliation, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for taking the disputed employment action. Id. at 1071; Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003). If the employer is able to do so, the burden shifts back to the employee to show that the employer's proffered reason is merely a pretext for discrimination. Jones, 349 F.3d at 1266. Such pretext may be demonstrated through direct evidence or by pointing out so many inconsistencies, implausibilities, incoherencies, or contradictions as to make the employer's justification unworthy of belief. Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1120 (10th Cir. 2001). Summary judgment in favor of the employer is warranted only if the employee has "failed to produce any evidence from which a reasonable inference could be drawn that [the employer's] proffered reasons were pretextual." Jones, 349 F.3d at 1266. However, close temporal proximity, though a factor in

showing pretext, "is not alone sufficient to defeat summary judgment." Annett v. Univ. of Kansas, 371 F.3d 1233, 1240 (10th Cir. 2004); see also Patran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000).[6]

Love has initially presented a *prima facie* case for retaliation, but with only circumstantial evidence of a causal connection between her first OHRC charge and the allegedly retaliatory behavior. Because Hilti has produced a legitimate, nondiscriminatory reason for failing to award Love a merit pay increase – her poor job performance – the burden shifts back to her to show that this was a mere pretext for discrimination. Love's arguments claiming pretext for retaliation include only her own opinion and temporal proximity of approximately six months between her protected activity and the first denial of a merit pay increase.[7] As a matter of law, such attenuated temporal proximity, especially standing alone, is insufficient to defeat summary judgment as to the causal connection element required for a retaliation claim.

---

[6] The Supreme Court has pointed out that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . hold that the temporal proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)). See also Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period between employee's single request for overtime pay and her termination was insufficient to establish causal connection for purposes of FLSA retaliation claim).

[7] Again, although Love may have produced evidence that her age or gender may have been considered in the context of decisions concerning her employment status, any related claims are not properly before this Court as she has not exhausted administrative remedies as to such claims.

**VI.**

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Dkt. # 10) is **granted**.

**DATED** this 16th day of June, 2005.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT